IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHERITA K. HICKS,                            *

    Plaintiff,                              *

    v.                                      *

                                                 **CIVIL NO. JKB-20-0022**

ANNE ARUNDEL COUNTY, *et al.*,              *

    Defendants.                             *

   *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

After being arrested and incarcerated under charges that a state prosecutor later dropped, Plaintiff Sherita K. Hicks brought various tort claims, along with state and federal constitutional claims, against the State of Maryland, Anne Arundel County ("the County"), and the Anne Arundel County Department of Detention Facilities ("AACDDF"). (Am. Compl., ECF No. 12.)[1] Hicks also sued Corporals F. Bilbrey and Gregory Pamer,[2] as well as Former State's Attorney Wes Adams and Assistant State's Attorney Glen Neubauer,[3] who allegedly participated in processes leading to her arrest and indictment. (*Id.*) The Amended Complaint is poorly drafted. It also is of the "shotgun" variety, with multiple theories and allegations running through most counts. Accordingly, it is difficult to parse and decipher.

Motions to dismiss were filed by the County and AACDDF (*see* First Mot. Dismiss, ECF No. 26), Corporals Bilbrey and Pamer (*see* Second Mot. Dismiss, ECF No. 27), and the State of

---

[1] In her original Complaint, Hicks sued the Anne Arundel County Police Department (*see* ECF No. 1), but she dropped her claims against that Defendant when she filed an Amended Complaint in February 2020 (ECF No. 8). Hicks then filed a second Amended Complaint in April 2020. (ECF No. 12.)

[2] Hicks refers to Bilbrey and Pamer as "Detectives" in her Amended Complaint (*see, e.g.*, Am. Compl. ¶ 45), but the Court will refer to these Defendants as "Corporals," the titles used in these Defendants' motion to dismiss (*see* ECF No. 27).

[3] Hicks also originally sued State's Attorney Anne Colt Leitess (ECF No. 1), but dropped her claims against that Defendant when she filed her second Amended Complaint (ECF No. 12).

Maryland, Adams, and Neubauer (collectively the "State Defendants") (*see* Third Mot. Dismiss, ECF No. 32). Defendants' motions to dismiss are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). Hicks recently attempted to file a notice of voluntary dismissal, pursuant to Federal Rule of Civil Procedure 41(a) (ECF No. 44), regarding her claims against the State Defendants, and then successfully did so several days later (ECF No. 46.) The Court has since terminated the State Defendants as parties to this action. (ECF No. 48.)

For the reasons set forth below, the Court will grant in part and deny in part Defendants Anne Arundel County and AACDDF's motion to dismiss (ECF No. 26), and grant in part and deny in part Defendants Corporals Bilbrey and Pamer's motion to dismiss (ECF No. 27). In light of Hicks's recent dismissal of her claims against the State Defendants (ECF No. 46), the Court will DENY AS MOOT those Defendants' motion to dismiss (ECF No. 32) because those claims are no longer part of the case.

## I.    *Background*[4]

On January 1, 2017, Plaintiff Sherita K. Hicks, then a resident of Anne Arundel County, Maryland, allegedly called the police in the middle of the night "to report an attempted break in and attempted theft of an All Terrain Vehicle (ATV) from her home." (Am. Compl. ¶¶ 1, 18.) Elsewhere, Hicks's poorly drawn Amended Complaint describes the allegedly stolen vehicle not as an ATV, but a "gray van with dark tinted windows," without attempting to explain the variance. (*Id.* ¶ 18.)

Hours later, Devante Allen reported an assault by "an unknown light skinned Black female and two Black males." (*Id.* ¶ 18.) During an interview with Cpl. Pamer, Allen identified Charles Wells and Ryan Harrison as the two male assailants. (*Id.* ¶¶ 18–19.) Hicks alleges that she "was

---

[4] The facts in this section are taken from the Amended Complaint and construed in the light most favorable to Hicks. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2

developed as a possible suspect due to her ownership of the gray van, and because she called the police to report the attempted theft." (*Id.* ¶ 20.)

In an attempt to ascertain the female suspect's identity, Cpl. Bilbrey assembled a photo array depicting six women, one of whom was Hicks. (*Id.* ¶ 20.) After inspecting the photo array, Allen allegedly selected photo number one as showing the female suspect who had assaulted him. (*Id.* ¶ 21.) Hicks was depicted in photo number five on the array. (*Id.*) Hicks alleges, "[a]ccording to Detective Pamer, Mr. Allen identified Plaintiff as the female who assaulted him along with Wells and Harrison," and "[a]ccording to Detective Pamer, when Mr. Allen was asked to state how certain he was that this was the woman who attacked him he stated 'it's her,' and when asked a second time whether he was certain, Mr. Allen repeated 'it's her.'" (*Id.* ¶ 20.) However, consistent with the incompleteness of many of the accusations in the Amended Complaint, Hicks does not allege when, or in what context, Cpl. Pamer made those statements about Allen's identification of Hicks.

During the course of the investigation, Hicks alleges that Cpl. Pamer made a series of false statements about her. In separate Applications for Statements of Charges against Hicks, Wells, and Harrison, Cpl. Pamer allegedly swore under oath that Allen identified Hicks in the photo array. (*Id.* ¶ 22.) Cpl. Pamer also allegedly attested that Hicks was identified from video footage of the assault on Allen, but Cpl. Pamer allegedly "never state[d] who made that identification, nor [did] he provide any basis upon which an independent determination can be made that the identification in fact occurred." (*Id.*)[5]

---

[5] Cpl. Pamer also allegedly falsely stated in the arrest warrant that the assault occurred fifteen days after its true date, but "the executed arrest warrant appears to have handwritten corrections as to the date of occurrence." (Am. Compl. ¶ 22.)

On January 12, 2017, in an Affidavit for a Search and Seizure Warrant for Hicks's home, car, and person, Cpl. Pamer allegedly falsely swore that Allen identified Hicks in the photo array. (*Id.* ¶ 23.) Further, Hicks alleges that Cpl. Pamer failed to follow up on a lead regarding the female suspect's true identity. On January 18, Cpl. Pamer interviewed Harrison, who allegedly stated that the female involved in the assault was his cousin "Mama," and that Hicks did not participate in the assault. (*Id.* ¶ 24.) Cpl. Pamer also interviewed Wells, who allegedly "simply agreed" to Cpl. Pamer's statement that Hicks was already a suspect. (*Id.* ¶ 25.) Wells allegedly told Cpl. Pamer that "Mama," also known as India Jones, was his girlfriend, but "did not volunteer information that his girlfriend was the person who was involved in this incident." (*Id.*) Cpl. Pamer allegedly "did not ask Mr. Wells whether 'Mama' was involved." (*Id.*) Additionally, Cpl. Pamer allegedly found a contact named "mumma" on Harrison's phone and confirmed that the number belonged to Jones. (*Id.* ¶ 26.) However, Allen allegedly had not identified Jones in any photo array, according to police reports. (*Id.*)

Upon Cpl. Pamer's allegedly false statements in the Application, a Statement of Charges issued, accusing Hicks in nine counts, including First Degree Assault. (*Id.* ¶ 22.) Hicks was arrested on January 19, 2017, based on the "arrest warrant that [Cpl. Pamer allegedly] obtained as a result of the falsehoods and misinformation about Plaintiff," and held without bond in the Anne Arundel County Jail, where she was allegedly "treated poorly, roughly and harshly, and as a result of the false accusations and the harsh treatment, Plaintiff became suicidal." (*Id.* ¶¶ 28–29.) Hicks was allegedly "stripped of her clothes and made to stay in an unheated jail cell naked and unclothed," and did not receive any supplies to treat her menstrual period. (*Id.* ¶ 29.) "[A]s a result of all of the unsanitary conditions," she allegedly got an infection. (*Id.*)

4

On January 20, 2017, during a Bond Review, the prosecutor assigned to Hicks's case allegedly "stated that he felt compelled to tell the court that another suspect had been developed," but did not provide any details about that suspect. (*Id.* ¶ 30.) Although the prosecutor still sought to have Hicks held, the Court allowed her to post bond. (*Id.*) Hicks was later indicted on charges of First Degree Assault, Second Degree Assault, Reckless Endangerment, and Conspiracy to Commit First Degree Assault, based on Cpl. Pamer's allegedly false statements. (*Id.* ¶ 31.) Hicks contends that Cpl. Pamer, other police officers, and prosecutors withheld and continue to withhold "exculpatory information that Hicks was not involved in this crime." (*Id.* ¶¶ 33–34.) After being indicted, Hicks requested that the State's Attorney's Office produce that exculpatory information, but the Office simply entered the case as Nolle Prosequi without providing "the requested exculpatory information . . . to the Plaintiff." (*Id.* ¶ 34.)

Hicks alleges that her "unfounded arrest and incarceration adversely affected and continues to affect Hicks's personal, professional and family life." (*Id.* ¶ 39.) As relief, she seeks compensatory damages, punitive damages, costs and interest, and attorney's fees. (*Id.* at 31.)

## II.   *Legal Standard*

"In considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and

conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.   Analysis

In her Amended Complaint, Hicks brings many claims against a range of defendants. Some of these claims, construed in a light favorable to Hicks, plausibly entitle her to relief. Some claims are barred by the defendants' immunities. Other claims are seriously deficient and do not come close to attaining *Twombly*'s plausibility standard. In this section, the Court will parse through Hicks's many claims, quickly disposing of all claims brought against the State Defendants, AACDDF, Cpl. Bilbrey, and Cpl. Pamer in his *official* capacity, and leaving intact only some claims brought against the County and Cpl. Pamer in his *personal* capacity.

Because governmental immunity protects the County from tort liability and Hicks falls far short of stating federal constitutional claims against the County, only Hicks's Maryland Declaration of Rights and vicarious liability claims (Counts 4 and 5, respectively, of her Amended Complaint) will remain standing against the County.[6]

In her Amended Complaint, Hicks devotes more attention to Cpl. Pamer's alleged misconduct than that of the other defendants, and ultimately, most of the surviving claims are against Cpl. Pamer (in his personal capacity). Statutory immunity shields Cpl. Pamer from Hicks's negligence claim, and Hicks clearly fails to plead the elements of all but one of her constitutional claims against Cpl. Pamer. Nonetheless, Count 3 of Hicks's Amended Complaint will partially survive dismissal insofar as it makes a gross negligence claim. Count 7, which the Court treats as making substantive constitutional claims under § 1983, will partially survive dismissal as well, but

---

[6] These claims survive dismissal because the County did not seek dismissal of Count 4, and Hicks adequately stated a claim against the County under Count 5.

only with respect to Hicks's Fourth Amendment claim. Hicks's other surviving claims against Cpl. Pamer include claims Cpl. Pamer did not seek to dismiss—namely, false arrest, false imprisonment, and Maryland Declaration of Rights claims (Counts 1, 2, and 4, respectively)—and a malicious prosecution claim (Count 6) that survives Cpl. Pamer's motion to dismiss.

### A. Claims Against State Defendants

The Court will DENY AS MOOT the motion to dismiss (ECF No. 32) filed by the State Defendants because Hicks concedes the dismissal of these claims is proper, and she seeks to withdraw them on her own initiative. (*See* ECF No. 46.) Hicks has acknowledged that her claims against the State of Maryland are barred by Eleventh Amendment immunity and that this Court is not the proper forum for her claims against Adams and Neubauer. (Opp'n to Third Mot. Dismiss at 1–2, ECF No. 36.) Federal Rule of Civil Procedure 41(a) permits a plaintiff to file a notice of voluntary dismissal without court order "before the opposing party serves either an answer or a motion for summary judgment." *See* Fed. R. Civ. P. 41(a)(1)(A)(i). Because the State of Maryland has filed neither its answer nor a motion for summary judgment, the Court acknowledges Hicks's dismissal of its claims against the State Defendants, and the Court's Order will note that these claims are no longer a part of this case.

### B. Claims Against Anne Arundel County

The Court will dismiss most of Hicks's claims against Anne Arundel County, which employed Cpl. Pamer, Cpl. Bilbrey, and the officials operating AACDDF during Hicks's arrest, prosecution, and incarceration. As against the County, only Counts 4 and 5—Hicks's Maryland Declaration of Rights and vicarious liability claims—will survive.

The County correctly notes that Hicks cannot seek punitive damages against it because Maryland law provides that "[a] local government may not be liable for punitive damages." MD.

7

CTS. & JUD. PROC. § 5-303(c)(1). Hicks does not appear to seek punitive damages on these claims, but they are precluded regardless.[7]

### 1. State Tort Claims – Counts 1, 2, 3, and 6

Anne Arundel County correctly asserts that the Maryland doctrine of governmental immunity shields it from liability under Hicks's false arrest, false imprisonment, negligence/gross negligence, and malicious prosecution claims. (*See* First Mot. Dismiss at 7.) The Maryland Court of Appeals has found that "the immunity of counties, municipalities and local agencies is limited to tortious conduct which occurred in the exercise of a 'governmental' rather than a 'proprietary' function." *Mayor and City Council of Balt. v. Whalen*, 909 A.2d 683, 688 (Md. 2006). A governmental function is one "imposed upon the municipality as a governmental or public agency by legislative enactment," and includes "discretionary, legislative, [and] judicial" acts, whereas a proprietary function, which is "done in the private or corporate capacity of the municipality," relates to "the local or special interests of the municipality." *Id.* at 689 (internal citations omitted); *see also Clark v. Prince George's Cnty.*, 65 A.3d 785, 791 (Md. Ct. Spec. App. 2013) ("The operation by a county of its police department is quintessentially governmental.").

"Counties are shielded from tort liability for governmental actions unless the General Assembly has specifically waived the immunity of the municipality," and Maryland law contains "no blanket waiver of governmental immunity regarding local jurisdiction." *Williams v. Prince George's Cnty.*, 685 A.2d 884, 887, 899 (Md. Ct. Spec. App. 1996). A Maryland statute provides that local governments may be vicariously liable for the tortious acts or omissions of their employees, MD. CTS. & JUD. PROC. § 5-303(b)(1); *see infra* Part III.B.2, but this statute "contains

---

[7] At this time, the Court will not evaluate whether punitive damages or any other forms of relief sought by Hicks are valid as against Defendant Cpl. Pamer because Cpl. Pamer's motion to dismiss does not challenge Hicks's desired forms of relief.

no specific waiver of governmental immunity when a governmental entity is sued in its own capacity." *Khawaja v. Mayor and City Council, City of Rockville*, 598 A.2d 489, 494 (Md. Ct. Spec. App. 1991). Further, Maryland courts have explained that governmental immunity can shield local governments from the sorts of tort claims presented in this case. *See DiPino v. Davis*, 729 A.2d 354, 358, 370 (Md. 1999) (holding that governmental immunity protected a city government from common law tort claims of false imprisonment and malicious prosecution); *Williams*, 685 A.2d at 899 (explaining that a county can invoke governmental immunity in response to false arrest, false imprisonment, negligence, and gross negligence claims).

Given that arresting individuals is a discretionary act, that Maryland courts have applied governmental immunity in cases involving similar claims, and that there is no indication Anne Arundel County waived its immunity, the County properly invokes governmental immunity as a defense to Hicks's tort claims. Thus, the Court will dismiss Counts 1, 2, 3, and 6—which encompass Hicks's claims of false arrest, false imprisonment, negligence/gross negligence, and malicious prosecution—against Defendant Anne Arundel County.

### 2. *Vicarious Liability Claim – Count 5*

Under Maryland law, "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." MD. CTS. & JUD. PROC. § 5-303(b)(1). For the purposes of vicarious liability, an action is within the scope of employment when it is "in furtherance of the employer's business and authorized by the employer." *Antonio v. SSA Sec., Inc.*, 110 A.3d 654, 658 (Md. 2015) (internal quotation marks and citations omitted). Notably, for vicarious liability to attach, the employee's "conduct need not be 'intended or consciously authorized,' so long as it is 'of the same general nature as that authorized' or 'incidental to the

conduct authorized.'" *Nero v. Mosby*, 890 F.3d 106, 126 (4th Cir. 2018) (quoting *Larsen v. Chinwuba*, 832 A.2d 193, 201 (Md. 2003)). In contrast, when an employee's "actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests," an employee's actions tend to fall outside the scope of employment. *Clark*, 65 A.3d at 799 (internal quotation marks and citations omitted).

Hicks states a plausible claim of vicarious liability (which is also called *respondeat superior* when describing an employer's liability for an employee's wrongful actions). Although the County did not expressly authorize Cpl. Pamer to swear to false statements in affidavits, a reasonable factfinder could conclude that the false statements Cpl. Pamer allegedly made were incidental to his general job responsibilities of investigating crimes and seeking arrest warrants. Hicks does not allege that Cpl. Pamer made false statements to advance his own personal interests.

Defendant Anne Arundel County argues that Hicks fails to state a claim of vicarious liability because "there has been no judgment against any employee" of the County. (First Mot. Dismiss Mem. Supp. at 9, ECF No. 26-1.) The Plaintiff need not wait until she secures a judgment against Cpl. Pamer (if she does) to bring a claim for vicarious liability against the County. Rather, the County is potentially "on the hook," at least until the employee conduct potentially giving rise to vicarious liability is adjudged to have not occurred, or to have been non-tortious. I.e., the County will be vicariously liable for qualifying torts that might later be proven against Cpl. Pamer, and to which Cpl. Pamer cannot raise an immunity defense. *See infra* Parts III.E.2, III.E.4. It is not improper for a plaintiff to bring a vicarious liability claim under Maryland law in these circumstances. *See* Md. State Bar Ass'n, 6 Pleading Causes of Action in Md. § 3.195 (2018)

(listing the "elements of a *respondeat superior* claim"). Thus, Count 5 will survive against the County.

### 3. *Federal Constitutional Claims – Counts 7, 8, and 9*

Confusingly, the Amended Complaint contains two different charges titled "Count 7." One of the "Count 7s" states substantive constitutional claims against Defendants, and the next "Count 7" describes virtually identical substantive claims while invoking § 1983. Because § 1983 is the statutory mechanism for bringing substantive constitutional claims against public officials, the Court will read the two "Count 7s" as merging together all of the allegations contained in both.[8] *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States.").

Under § 1983, a county cannot be liable for its employees' federal constitutional torts on a *respondeat superior* basis, but may be liable when official county policy of some sort causes a constitutional tort. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). *Monell* liability may arise when a county employee's constitutionally offensive conduct is performed in furtherance of some "policy or custom" of the county. *Milligan v. Newport News*, 743 F.2d 227, 229 (4th Cir. 1984).

To state a § 1983 claim against a county, also known as a *Monell* claim, a plaintiff must allege (1) "a constitutional harm that stems from the acts of a municipal employee taken in furtherance of some municipal policy or custom," (2) "facts showing that the policy's creation is fairly attributable to the municipality," and (3) "an affirmative causal link between the policy or custom, and the particular injury suffered by the plaintiff." *Wash. v. Balt. Police Dep't*, 457

---

[8] The Court notes that its treatment of Count 7 is different from that of Defendants—they refer to Hicks's substantive constitutional claims as Count 7 and her § 1983 claims as Count 8.

F. Supp. 3d 520 (D. Md. 2020) (internal quotation marks omitted) (citing *Milligan*, 743 F.2d at 229 (4th Cir. 1984); *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987)).

Hicks does not sufficiently plead the elements of *Monell* liability as to Count 7. In her Amended Complaint, Hicks alleges that County employees took "gratuitous, illegal, improper, [and] objectively unreasonable" actions that violated her constitutional rights (Am. Compl. ¶ 114), and the County had "a policy and or custom of allowing and encouraging investigations, arrests, indictments and prosecutions that are not based on probable cause, [and] that are based on false and misleading information, and of withholding exculpatory information" (*id.* ¶ 44).

Hicks's statements are unsupported by any factual allegations. They are merely unsubstantiated legal assertions that cannot survive a motion to dismiss. *See Twombly*, 550 U.S. at 555, 557. Further, it is not enough to allege that constitutional violations occurred in one instance and ask the Court to infer that those violations are part of a broader municipal policy or custom. *Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir. 2009). Thus, Plaintiff has not successfully pleaded *Monell* liability in Count 7.

In Counts 8 and 9 of Hicks's Amended Complaint, she claims that Anne Arundel County discriminated against her on the basis of her sex and race. Hicks does not state a cause of action under which she brings these constitutional claims against the County. She fails to successfully plead under § 1983. In addition, there are substantive deficiencies in Hicks's Equal Protection Clause claims. As discussed in greater detail in Part III.E.5.c, *infra*, Hicks's allegations that she was treated differently from non-Black and non-female detainees in Anne Arundel County do not sufficiently state a claim against Cpl. Pamer under the Fourteenth Amendment. And, Hicks pleads even fewer facts against the County and its policies. Thus, the failure of the Equal Protection Clause claim against the County is even clearer.

Accordingly, all of Hicks's constitutional claims against the County will be dismissed.

### C. Claims Against AACDDF

The Court will dismiss all claims against AACDDF because it is not a legal entity that is capable of being sued. When "[n]either the Constitution nor any other provision of [Maryland] law . . . creates a governmental agency" with the name of the state agency being sued, that agency cannot be a defendant in a lawsuit. *Boyer v. State*, 594 A.2d 121, 128 n.9 (Md. 1991). Under the same reasoning, Maryland courts maintain that "[c]ounty police departments are agents of the State and should not be viewed as separate legal entities." *Hines v. French*, 852 A.2d 1047, 1068 (Md. 2004); *see also Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from . . . the county government of which this 'office' is simply an agency."). Hicks does not proffer any legal bases for directly suing AACDDF, as opposed to Anne Arundel County. Thus, the claims against AACDDF will be dismissed.

### D. Claims Against Cpl. Bilbrey

In her Amended Complaint, Hicks does not allege any facts showing wrongdoing on the part of Cpl. Bilbrey. The only specific action that Hicks attributes to Cpl. Bilbrey is that "Detective F. Bilbrey #1318 created a photo array containing a photo of Hicks and five other women." (Am. Compl. ¶ 20.) Relatedly, Hicks alleges that Cpl. Bilbrey knew "[t]he photo of Plaintiff Sherita Hicks is photo number 5 of the array." (*Id.* ¶ 21.) This statement logically flows from Cpl. Bilbrey's alleged role in assembling the photo array, but does not allege any wrongdoing on Cpl. Bilbrey's part. As against Cpl. Bilbrey, the Amended Complaint falls woefully short—it is grossly deficient.

13

Hicks's few statements accusing Bilbrey of wrongdoing are conclusory assertions that lack the factual specificity *Twombly* and *Iqbal* require. *See Iqbal*, 556 U.S. at 678–79 (explaining that Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). First, without alleging any facts in support of this conclusion, Hicks asserts that Cpl. Bilbrey "knew or should have known that Plaintiff had not been identified as involved in the assault against Devonte Allen." (Am. Compl. ¶ 36.) Second, Hicks groups Cpl. Bilbrey with Cpl. Pamer in asserting that "Detective Pamer, Detective Bilbrey, and other members of the Anne Arundel County Police Department manufactured evidence against her[.]" (*Id.* ¶ 38). While Hicks specifically alleges that Cpl. Pamer falsely stated that video footage revealed her presence at the crime scene (*id.* ¶ 22), Hicks alleges no facts suggesting that Cpl. Bilbrey manufactured any evidence. Here, Hicks makes a heavy charge against Cpl. Bilbrey, but she utterly fails to support it. This is highly inappropriate pleading.

Third, Hicks states that "Detective Pamer and Detective Bilbrey and other members of the Anne Arundel County Police Department who are unknown at this time knowingly put together the photo array containing Plaintiff's picture and then falsely swore in their arrest warrant that Plaintiff had been identified[.]" (*Id.* ¶ 42.) Read consistently with the facts alleged elsewhere in the Amended Complaint, this sentence simply reiterates that Cpl. Bilbrey was responsible for knowingly putting together a photo array—an action that is not unlawful in itself—and that Cpl. Pamer falsely swore that Hicks was identified as a suspect. Hicks alleges no facts suggesting that Cpl. Bilbrey made any false statements regarding Hicks's identification as a suspect, or that Cpl. Bilbrey knew Cpl. Pamer made false statements and failed to correct them. Again, Hicks has leveled an extremely serious allegation against Cpl. Bilbrey and then failed to back it up. This is yet another example of poor pleading—even reckless this time.

14

In her response to Cpl. Bilbrey's motion to dismiss, Hicks concedes that she "is without knowledge of Cpl. Bilbrey's entire role in this matter," but argues, "[s]ince he is involved in a major investigative activity such as creating a photospread of potential suspects, it is not unreasonable to assume that Cpl. Bilbrey may have played a greater role in this investigation than Plaintiff is aware." (Opp'n to Second Mot. Dismiss at 3–4, ECF No. 35.) These conclusory assertions regarding Bilbrey's potential participation in unlawful conduct, which are unsupported by specific factual allegations, do not state a claim for relief that is plausible on its face. Further, counts in a lawsuit—particularly ones that impugn a person's character—are totally inappropriate when the foundation is limited to speculation that a defendant "may have played a greater role," or may have played a role at all, in misconduct. Not only should these flimsy accusations be dismissed, they have no business *even appearing* in a complaint in federal court.

### E. Claims Against Cpl. Pamer

The Court now considers Hicks's many claims against Cpl. Pamer, who allegedly made false statements resulting in Hicks's allegedly unjustified arrest and incarceration. As a starting point, the Court will dismiss all claims brought against Cpl. Pamer in his *official* capacity, which are effectively claims against the County itself. As for Hicks's claims against Cpl. Pamer in his *personal* capacity, because Cpl. Pamer successfully invokes statutory immunity and Hicks falls far short of stating multiple constitutional claims, the Court will dismiss Hicks's negligence, vicarious liability, and Fifth, Sixth, and Fourteenth Amendment claims. However, Hicks's false arrest, false imprisonment, gross negligence, Maryland Declaration of Rights, malicious prosecution, and Fourth Amendment claims against Cpl. Pamer in his personal capacity will survive dismissal.

### *1. Claims Against Cpl. Pamer in His Official Capacity*

Hicks sues Cpl. Pamer in both his personal and official capacities (*see* Am. Compl. ¶ 5), but the Court will treat Hicks's official capacity claims as being against Anne Arundel County. The Supreme Court has held that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In such suits, an official can invoke "forms of sovereign immunity that the entity, *qua* entity, may possess." *Id.* at 167.

Cpl. Pamer seeks dismissal of Counts 3, 5, 6, 7, 8, and 9, without specifying whether he seeks dismissal for claims against him in his personal or official capacity. (*See* Second Mot. Dismiss.) The Court will assume Cpl. Pamer sought dismissal of those counts in their entirety, and will therefore dismiss Hicks's official capacity claims against Cpl. Pamer for all of those counts. The Court has already dismissed all but Counts 4 and 5 against the County, so those claims have effectively been dismissed against Cpl. Pamer in his official capacity as well. The Court will also exercise its discretion to dismiss Hicks's official capacity suits under Counts 4 and 5 because they are redundant with Hicks's claims against the County. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming the dismissal of an official capacity claim because it "is essentially a claim against the [government entity] and thus should be dismissed as duplicative").

In contrast, as is discussed in the following sections, several of Hicks's claims against Cpl. Pamer in his *personal* capacity will survive dismissal.

### *2. Negligence/Gross Negligence – Count 3*

Hicks brings a negligence claim against Cpl. Pamer, asserting that he breached "a duty to use reasonable care not to harm Ms. Hicks or to violate her rights" by, *inter alia*, falsely arresting Hicks, "[i]mproperly investigating the incident in question, including the assault on Devonte

Allen," and "[i]mproperly accusing [Hicks] of crimes." (Am. Compl. ¶¶ 69–70.) Elsewhere in her Amended Complaint, Hicks alleges that Cpl. Pamer acted with "gross negligence" in facilitating Hicks's "unfounded arrest and incarceration."[9] (*Id.* ¶ 41.)

In seeking dismissal of Hicks's negligence claim, Cpl. Pamer correctly invokes statutory immunity under the Maryland Tort Claims Act ("MTCA"), which provides that "state personnel" are immune "from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." MD. CTS. & JUD. PROC. § 5-522(b). The District of Maryland has "treat[ed] county police officers as state personnel for purposes of MTCA." *Posyton v. Maryland*, Civ. No. PWG-16-3887, 2017 WL 3704616, at *9 n.8 (citing *Housley v. Holquist*, 879 F. Supp. 2d 472, 483 (D. Md. 2011)). Maryland courts treat the MTCA's "within-the-scope-of-employment requirement [as] 'coextensive with the common law concept of 'scope of employment' under the doctrine of respondeat superior.'" *Nero*, 890 F.3d at 126. As discussed in Part III.B.2, *supra*, Cpl. Pamer was undertaking conduct "of the same general nature as that authorized" by the County, so he was acting within the scope of his employment for the purposes of the MTCA. *See Nero*, 890 F.3d at 126 (quoting *Chinwuba*, 832 A.3d at 200)). Thus, under the MTCA, Cpl. Pamer does have statutory immunity from Hicks's negligence claim. *See Krell v. Braightmeyer*, 828 F. App'x 155, 159–60 (4th Cir. 2020) (upholding a grant of statutory immunity under the MTCA to police officers on negligence claims).

However, a gross negligence claim, by definition, does not fall within the immunity conferred by the MTCA. The Maryland Court of Appeals defines gross negligence as "an

---

[9] Hicks does not explicitly mention gross negligence in the "Claims" section of her Amended Complaint, but she incorporates by reference her allegations from elsewhere in her Amended Complaint. (Am. Compl. ¶ 68.) Following the Fourth Circuit's approach in *Ibarra*, and despite the poor draftsmanship, the Court will construe the Amended Complaint in the light most favorable to Hicks by concluding, at least for now, that she stated a gross negligence claim. 120 F.3d at 474.

intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Cooper v. Rodriguez*, 118 A.3d 829, 832–33 (Md. 2015). Grossly negligent conduct displays "something *more* than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (quoting *Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004) (emphasis in original). "With regard to omissions in a probable-cause statement," the Fourth Circuit has held "that a drafter acts with reckless disregard when she 'fail[s] to inform the judicial officer of facts [she] knew would negate probable cause.'" *Nero*, 890 F.3d at 130 (quoting *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621 (4th Cir. 2007)).

Police officers do not owe a special duty to arrestees, but they do owe at least an ordinary one. Therefore, Cpl. Pamer had a duty to act with reasonable care with respect to Hicks. A reasonable jury could determine that Cpl. Pamer exhibited gross negligence through his alleged repeated false statements about Hicks's involvement in the assault on Allen, his alleged lies about video footage concerning Hicks, and his alleged inadequate questioning of witnesses—especially because Cpl. Pamer had reason to know that his actions could result in the incarceration of an innocent individual. Cpl. Pamer's alleged false statements alone can qualify as grossly negligent under Fourth Circuit precedent because Hicks alleges that Cpl. Pamer "knew or should have known" Allen did not identify her in a photo array, yet he swore to the contrary in legal documents giving rise to Hicks's arrest and indictment. (*See* Am. Compl. ¶¶ 22–23.) Thus, Hicks's gross negligence claim will survive the Second Motion to Dismiss.

### 3. *Vicarious Liability – Count 5*

As discussed in Part III.B.2, *supra*, a supervisor may be vicariously liable for tortious actions taken by an employee acting within the scope of his or her employment. It is unclear

whether Hicks intended to bring a vicarious liability claim against Cpl. Pamer, but because Hicks does not allege that Cpl. Pamer had any employees or agents, or that they committed torts, she fails to state a claim of vicarious liability against Cpl. Pamer.

### 4. *Malicious Prosecution – Count 6*

To establish a malicious prosecution claim, a plaintiff must allege (1) "the defendant instituted a criminal proceeding against the plaintiff"; (2) "the criminal proceeding was resolved in the plaintiff's favor"; (3) "the defendant did not have probable cause to institute the proceeding"; and (4) "the defendant acted with malice or a primary purpose other then [sic] bringing the plaintiff to justice." *Okwa v. Harper*, 757 A.2d 118, 130 (Md. 2000).

"Probable cause" consists of "facts and circumstances 'sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" *DiPino*, 729 A.2d at 361 (alterations in original) (citation omitted) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). Malice means "the defendant was actuated by an improper motive, a purpose other than that of bringing [the plaintiff] to justice." *Id.* at 374 (alterations in original) (internal quotation marks and citations omitted). "[M]alice, though a separate element of the tort, may be inferred from the lack of probable cause." *Id.* In *McDaniel v. Arnold*, a judge of this Court explained, "[a]lthough actual malice cannot be inferred from the mere absence of probable cause, standing alone, actual malice 'can be inferred from an arrest that was so lacking in probable cause and legal justification as to render [the arresting officer's] stated belief in its existence unreasonable and lacking in credibility,' when all of the facts are considered in context." 898 F. Supp. 2d 809, 850 (D. Md. 2012) (quoting *Thacker v. City of Hyattsville*, 762 A.2d 172, 193–94 (Md. Ct. Spec. App. 2000)). The Maryland Court of Appeals has held that "[t]he question of

malice, that is, the question of whether the defendant acted from other than proper motives . . . is a question for the jury." *Banks v. Montgomery Ward & Co.*, 128 A.2d 600, 606 (Md. 1957).

Hicks established element (1) of this claim by alleging that Cpl. Pamer repeatedly made false statements under oath, because a police officer may be liable for malicious prosecution when he or she "concealed or misrepresented facts" in connection with the prosecution. *Evans v. Chalmers*, 703 F.3d 636, 648 (4th Cir. 2012) (quoting *Snider v. Lee*, 584 F.3d 193, 206 (4th Cir. 2009) (Stamp, J., concurring)). Hicks's allegation that the prosecutor's office "entered the case as Nolle Prosequi" establishes element (2). (*See* Am. Compl. ¶ 34.) Hicks also sufficiently alleged element (3) to survive dismissal. Assuming all of her allegations are true, a prudent police officer almost certainly would not believe Hicks participated in the assault on Allen when the only evidence against her was the use of her van in the assault.

Whether Hicks sufficiently pleaded element (4) is a much closer call. Hicks asserts that Cpl. Pamer's actions were performed with "an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure" her. (*Id.* ¶ 108.) While this language is rather conclusory, it is difficult to fathom how Hicks could allege specific facts regarding Cpl. Pamer's mental state before any discovery has commenced in this action. Maryland courts permit malice to be inferred from a lack of probable cause, and even under the more stringent standard discussed in *McDaniel*, a reasonable factfinder may conclude that Cpl. Pamer could not credibly excuse his behavior by claiming that his repeated false statements about Allen's identification and video footage, and his decision not to follow leads pointing to Mama, were simply innocent mistakes. A reasonable factfinder might also agree with Hicks's argument that Cpl. Pamer's malice can be "inferred by the sheer number of times that Cpl. Pamer falsely swore that the complaining witness had selected her as the perpetrator." (Opp'n to Second Mot. Dismiss at 5.) If, as Hicks alleges,

20

Cpl. Pamer repeatedly attested that Hicks committed an offense, without verifying that the evidence supported his sworn statements or pursuing evidence about an alternative suspect, Cpl. Pamer's conduct could signal an improper, malicious motive.

Because a reasonable factfinder could find malice, assuming the Amended Complaint is true and its statements are construed in Hicks's favor, *see Ibarra*, 120 F.3d at 474, the malicious prosecution claim survives dismissal.

### 5. *Federal Constitutional Claims – Counts 7, 8, and 9*

In Count 7, Hicks asserts that Defendants violated the "rights, privileges and immunities secured to her by the United States Constitution including but not limited to the Fourth, Fifth, and Sixth Amendments." (Am. Compl. ¶ 107.) While Hicks alleges sufficient facts to state a plausible § 1983 claim alleging a violation of the Fourth Amendment, she does not do so with respect to her accusations that her Fifth or Sixth Amendment rights were violated.[10]

#### a. *Elements of § 1983 Cause of Action*

Stating a claim under § 1983 requires showing that (1) a plaintiff has "been deprived of a right 'secured by the Constitution and the laws' of the United States" and (2) a defendant deprived the plaintiff of this right while acting "under color of state law." *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978).

The first requirement is satisfied with respect to Hicks's Fourth Amendment claim against Cpl. Pamer, the only constitutional claim that will survive dismissal, because the Supreme Court has held that the rights conferred under the Fourth Amendment may be enforced through § 1983

---

[10] Although the Amended Complaint states that Count 7 is not limited to claims under the Fourth, Fifth, and Sixth Amendments, the Court will not evaluate whether Hicks might have plausibly stated a claim under any other constitutional provisions that she did not explicitly invoke. To the extent Plaintiff or her counsel believe that such pleading language authorizes the Court to engraft violations of other, unspecified elements of the Constitution that it might perceive onto this Amended Complaint, they fundamentally misunderstand their pleading obligations.

suits. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017) (holding that a plaintiff may bring a § 1983 action against a city and its police officers, alleging that the plaintiff's unlawful arrest and detention violated the Fourth Amendment).

As for the second requirement, "those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it," are acting under state law for purposes of a § 1983 claim. *Monroe v. Pape*, 365 U.S. 167, 172 (1961), overruled in part on other grounds by *Monell*, 436 U.S. at 695–701 (1978). "[M]isuse of power possessed by virtue of state law, as opposed to a 'purely personal pursuit,' falls within § 1983." *Bailey v. Prince George's Cnty., Md.*, 34 F. Supp. 2d 1025, 1027 (D. Md. 1999) (quoting *Revene*, 882 F.2d at 873–74). The Fourth Circuit has held that a county police officer may still be acting under the color of state law when, "off duty, out of uniform and operating his own vehicle," he shoots an individual. *Revene*, 882 F.2d at 872–74. Cpl. Pamer does not dispute that, as an Anne Arundel County police officer who was on duty while arresting Hicks, questioning witnesses, and swearing to allegedly false statements, he was acting under color of state law. Because Hicks has alleged the elements of a § 1983 cause of action, the Court will next consider whether she has adequately pleaded the elements of her substantive constitutional claims.

### b. *Fourth Amendment Claim*

"Unquestionably, '[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.'" *Miller*, 475 F.3d at 627 (quoting *Brooks v. City of Winston–Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). Even if "a prosecutor retains all discretion to seek an indictment, police officers may be held to have caused the seizure and remain liable to a wrongfully indicted defendant . . . when they have lied to or misled the prosecutor, failed to disclose exculpatory

22

evidence to the prosecutor, or unduly pressured the prosecutor to seek the indictment." *Evans*, 703 F.3d at 649–50 (internal citations omitted). In *Franks v. Delaware*, the Supreme Court held the Fourth Amendment may be violated when "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. 154, 155–56 (1978).

Under *Franks*, to establish a Fourth Amendment violation, a party must show (1) intentionality, which means that "the affiant either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the affidavit," and (2) materiality, which means that if a defendant's affidavit were corrected, it would no longer establish probable cause. *United States v. Wharton*, 840 F.3d 163, 169–70 (4th Cir. 2016). Although the *Franks* test arose and is frequently applied in the criminal context, the Fourth Circuit has applied this test to ascertain the constitutionality of false or omitted statements underlying arrest warrants in civil § 1983 actions brought by formerly detained individuals. *See, e.g., Evans*, 703 F.3d at 649–50; *Miller*, 475 F.3d at 627.

The Fourth Circuit has held that a plaintiff in a § 1983 action can sufficiently plead intentionality when "[n]o record evidence lends any support for [a police officer's] statements" underlying his affidavits, and clarified that such statements can be considered "deliberate falsehoods." *Evans*, 703 F.3d at 650. Cpl. Pamer's alleged false statements about Allen's identification of Hicks in a photo array and video footage showing Hicks at the crime scene can satisfy the intentionality prong of the *Franks* test. Hicks also alleges that Cpl. Pamer asked Wells leading questions, disregarded potential evidence about Jones, and failed to release exculpatory evidence. *See United States v. Lull*, 824 F.3d 109, 117 (4th Cir. 2016) (quoting *Miller*, 475 F.3d

23

at 627) ("One way of establishing reckless disregard is by proffering 'evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'"). Hicks also pleads sufficient facts to establish materiality. A reasonable jury could certainly agree with her assertion that the "false information [Cpl. Pamer] presented to the Grand Jury . . . result[ed]" in her indictment. (Am. Compl. ¶ 31.)

In his Answer to Hicks's Amended Complaint, Cpl. Pamer invokes a defense of qualified immunity (*see* ECF No. 29 at 8), which is designed to protect public officials from becoming embroiled in lawsuits when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *In re Mills*, 287 F. App'x at 280 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, the Fourth Circuit has held that a police officer facing a civil § 1983 suit cannot invoke a qualified immunity defense for an alleged *Franks* violation. It is "clearly established 'that the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make . . . omissions to seek a warrant that would otherwise be without probable cause.'" *Osborne v. Georgiades*, 679 F. App'x 234, 239 (4th Cir. 2017) (quoting *Miller*, 475 F.3d at 631–32). Moreover, "a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by [omitted facts] that the officer knows or should know [would negate probable cause]." *Osborne*, 679 F. App'x at 239–240 (alteration in original) (internal quotation marks omitted) (quoting *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 2014)). Thus, the doctrine of qualified immunity cannot shield Cpl. Pamer from Hicks's adequately pleaded Fourth Amendment claim.

### c. *Fifth and Sixth Amendment Claims*

Hicks does not allege facts supporting Fifth or Sixth Amendment claims. Even if Hicks had pleaded a Fourteenth Amendment Due Process Clause claim instead of improperly invoking

the Fifth Amendment,[11] Hicks does not adequately allege a Due Process claim. "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). Not only does Hicks fail to allege that the facts in her Amended Complaint shock the conscience, but the Fourth Circuit has explicitly held that "the Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). Relatedly, Hicks makes no attempt to explain why Cpl. Pamer's alleged false statements underlying the arrest warrant fit within the scope of the Sixth Amendment, which typically protects detainees' rights *during* trial.[12] Thus, neither of these constitutional claims will survive dismissal.

### d. *Equal Protection Clause Claims*

Hicks also brings claims under the Equal Protection Clause, alleging race-based discrimination as Count 8 and sex-based discrimination as Count 9. (Am. Compl. ¶¶120–131.) A plaintiff cannot state a Fourteenth Amendment claim simply by alleging that a governmental actor treated her poorly on account of her sex and race. To state a claim under the Equal Protection Clause, "a plaintiff must first demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Differential treatment may be alleged by identifying specific individuals in a defendant's position and alleging that these other individuals were treated differently. *See, e.g., King v.*

---

[11] The Fifth Amendment's protections apply to states through the Fourteenth Amendment. *See Murr v. Wis.*, 137 S. Ct. 1933, 1942 (2017).

[12] *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.").

*Rubenstein*, 825 F.3d 206, 221 (4th Cir. 2016) (holding that an inmate's Equal Protection Clause claim survived dismissal when it alleged two other inmates with medical conditions similar to the plaintiff's were not forced to undergo surgery, while the plaintiff was). Discriminatory intent may be shown by circumstantial evidence, such as statements revealing a defendant's attitude toward someone of a particular race, *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1133 (4th Cir. 1988), or evidence of prior discriminatory practices, *Wyatt v. Sec. Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir. 1987).

In a complaint, a statement that similarly-situated individuals of a different race or gender were not treated the same as the plaintiff constitutes a "conclusory allegation [that] is inadequate under *Iqbal* and *Twombly* to infer discrimination." *Roberts v. Off. of the Sheriff for Charles Cnty.*, Civ. No. DKC-10-3359, 2012 WL 12762, at *6 (D. Md. Jan. 3, 2012); *see also Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (holding that an African-American plaintiff's statement that he "was treated differently as a result of his race than whites" was too conclusory to state a claim of discrimination in the employment context).

Hicks has alleged no facts about how Cpl. Pamer and other County officials have handled suspects and detainees who were not Black or female. Statements such as "[a]rrestees who were not African American Black woman were not treated" the same as Hicks (Am. Compl. ¶ 128) amount to "'naked assertion[s]' devoid of 'further factual enhancement'" that cannot survive dismissal under Federal Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Similarly, Hicks does not allege facts that would permit an inference of discriminatory intent on Cpl. Pamer's part. Hicks repeatedly asserts that "Defendants discriminated against Plaintiff" and "subjected her to disparate, negative, injurious and harassing treatment." (Am. Compl. ¶¶ 121–23, 127–29.) These legal conclusions, devoid of factual support, do not plausibly

state a claim under the Equal Protection Clause. Thus, the Court will dismiss Counts 8 and 9 of Hicks's Amended Complaint.

## IV.   Conclusion

For the foregoing reasons, an order shall enter granting in part and denying in part Defendants Anne Arundel County and AACDDF's motion to dismiss (ECF No. 26), granting in part and denying in part Defendants Corporals Bilbrey and Pamer's motion to dismiss (ECF No. 27), and denying as moot the State Defendants' motion to dismiss (ECF No. 32), consistent with Hicks's notice of voluntary withdrawal of her claims against these Defendants (ECF No. 46).

DATED this 22 day of December, 2020.

BY THE COURT:

James K. Bredar
Chief Judge

27