## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SHERITA K. HICKS,            *

     Plaintiff,              *

     v.                    *                 CIVIL NO. JKB-20-00022

ANNE ARUNDEL COUNTY, et al.,   *

     Defendants.           *

*    *    *    *    *    *    *    *    *    *    *    *

## <u>MEMORANDUM</u>

This case arises from Sherita K. Hicks' arrest and incarceration in connection with assault charges that a state prosecutor later dropped. Although this Court previously dismissed some of Hicks' claims, several claims remain against Defendants Cpl. Gregory Pamer and Anne Arundel County (the "County"). The remaining claims are a 42 U.S.C. § 1983 claim and several state law claims against Cpl. Pamer in his personal capacity and state law claims against the County.

Now pending before the Court is Defendants' Motion for Summary Judgment. (*See* Mot. Summ. J., ECF No. 72.) The Motion is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Court will DENY Defendants' Motion for Summary Judgment (ECF No. 72).

### I.  *Factual Background*

On January 1, 2017, Hicks called the police around 2:40 a.m. to report an attempted theft of an all-terrain vehicle ("ATV") from her home. (Mot. Summ. J. Mem. Supp. at 3, ECF No. 72-1.) Charles Wells—the owner of the ATV—believed that Devante Allen was the individual who had attempted the theft. (*Id.*) About an hour later, Wells and others arrived in a gray van at the

1

home of Chaquita Coates, Allen's mother, and banged on her door.  (*Id.*)  Coates wrote down the license plate number and provided it to the police, who later discovered that the van was registered to Hicks.  (*Id.* at 3–4).  Later that day, Allen was assaulted.  (*Id.* at 4.)[1]

On January 3, Cpl. Pamer was assigned to investigate the case.  (*Id.* at 4.)  He obtained a cell phone video and a surveillance video of the assault.  (*Id.* at 4–5.)  The videos, which are unclear, show two men and a woman arriving in a gray van and assaulting Allen.  (Mot. Summ. J. Mem. Supp. Ex. 4, ECF No. 72-5.)  The cell phone video includes audio of the woman indicating that Allen broke into her house.  (*Id.*)

On January 5, Cpl. Pamer interviewed Coates, who identified Wells as the person who came to her home and also as the person who assaulted Allen.  (Mot. Summ. J. Mem. Supp. at 5.)

The same day, Cpl. Pamer interviewed Allen about the assault, and Allen identified Wells and RH (a juvenile) as the two male assailants.  (*Id.* at 5–6.)  Allen did not know the female assailant but described her as a light-skinned black woman.  (*Id.* at 6.)  To ascertain the identity of the female assailant, Cpl. Bilbrey assembled a photo array of six women, including Hicks.  (*Id.*)  At the time, Hicks was a suspect because she reported the theft on January 1, a car registered to her arrived at Coates' home that night and a gray van was used during the assault, and a female can be heard on the video saying that Allen had broken into her home.  (*Id.*)

Cpl. Pamer administered the photo array, and Allen selected photo number one as the female assailant.  (*Id.* at 6–7.)  Allen did not select Hicks, who was photo number five.  (*Id.*)  Cpl. Pamer requested that Allen sign photo one and initial the rest of the photos (including photo five, the photo of Hicks).  (Mot. Summ. J. Mem. Supp. Ex. 3 at AACOU 00042–47, ECF No. 72-4; Opp'n Mot. Summ. J. Ex. 1, ECF No. 78-2.)  Further, Allen signed a form indicating that he

---

[1]     The video of the assault indicates that it occurred on January 2, not January 1.  (Mot. Summ. J. Mem. Supp. Ex. 4, ECF No. 72-5.)

selected photo one and, in response to the following question on the form: "[w]ithout using a numeric scale, tell me how certain you are in your own words," wrote "[i]t's her." (Mot. Summ. J. Mem. Supp. Ex. 3 at AACOU 00041.)   Both Allen and Cpl. Pamer signed this form. (*Id.*)

On January 12, Cpl. Pamer signed an Affidavit for a Search and Seizure Warrant. (*Id.* at AACOU 00026–31.)   With respect to Hicks, the affidavit indicates that "a photo array was completed with Devante Allen containing a photograph of Sherita Hicks.  He positively identified Sherita Hicks as the female who attacked him on 01/01/2017." (*Id.* at AACOU 00029.)   The affidavit further states that the surveillance footage shows "[a] female, who was identified as Sherita Hicks." (*Id.*)   The affidavit also indicates that Hicks reported the attempted theft to the police and that she owns a silver/gray 2004 Ford van with the same tags as the van reported by Coates. (*Id.*)   In the affidavit, Cpl. Pamer does not indicate that Allen identified the female assailant as "light-skinned." (*Id.*; Opp'n Mot. Summ. J. at 2, ECF No. 78-1.)

On January 16, Cpl. Pamer filed an Application for Statement of Charges against Hicks, which included similar language with respect to Hicks as the affidavit filed on January 12. (Mot. Summ. J. Mem. Supp. Ex. 2 at Court 003–004, ECF No. 72-3.)   The arrest warrant issued that day. (*Id.* at Court 005–006.)

On January 18, Cpl. Pamer interviewed RH, who admitted to participating in the assault. (Mot. Summ. J. Mem. Supp. at 7.)   RH confirmed that Wells was one of the assailants and explained that Wells' girlfriend, India Jones, participated in the assault, not Hicks. (*Id.*)   He further explained that Hicks, Wells, and Jones live in the same house. (*Id.*)   The same day, Cpl. Pamer interviewed Wells, who also admitted to participating in the assault. (*Id.*)   He did not affirmatively

identify Hicks as one of the assailants, but he did not correct Cpl. Pamer when Cpl. Pamer made statements implicating Hicks.  (*Id.* at 7–8.)

Hicks was arrested on January 19 and was held with no bond.  (*Id.* at 8.)  When she was interviewed by Cpl. Pamer, she denied any involvement in or knowledge of the assault.  (*Id.*)

Prior to Hicks' bail review on January 20, Cpl. Pamer emailed the States Attorney explaining that "some new information has come to light about another female suspect possibly being involved."  (Mot. Summ. J. Mem. Supp. Ex. 3 at AACOU 00036.)  Cpl. Pamer then conducted another photo array with Allen, this time with a photo of Jones.  (Mot. Summ. J. Mem. Supp. at 9.)  Allen did not positively identify anyone in this second photo array.  (Mot. Summ. J. Mem. Supp. Ex. 3 at AACOU 00048–54.)  That day, Hicks was released after she posted bond. (Mot. Summ. J. Mem. Supp. at 9.)   She was indicted on January 27, but all charges were entered nolle prosequi on February 22.  (*Id.*)

## II.    *Legal Standard*

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting

4

Fed. R. Civ. P. 56(e).  The nonmoving party bears the burden of showing the existence of a genuinely disputed material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  Moreover, a dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Id.* at 248–50.

### III.    Analysis

Defendants argue that Cpl. Pamer is entitled to qualified immunity with respect to Hicks' § 1983 claim and state law claims, which include false arrest, false imprisonment, gross negligence, malicious prosecution, and Maryland Declaration of Rights claims.  Alternatively, Defendants argue that the Court should grant summary judgment on Hicks' state law claims because Cpl. Pamer did not act with gross negligence as a matter of law; his mistaken belief was honest and reasonable; and there was insufficient evidence of improper motive or malice as a matter of law.  Last, Defendants argue that, because there is no wrongdoing by Cpl. Pamer, the Court should grant summary judgment on the vicarious liability and Maryland Declaration of Rights claims against the County.  For the reasons stated below, the Court disagrees that summary judgment is appropriate on any of Hicks' claims and therefore will deny Defendants' Motion for Summary Judgment.

### A.   Qualified Immunity (§ 1983 Claim)

Despite this Court's earlier ruling that he is not entitled to qualified immunity, Cpl. Pamer's only argument with respect to Hicks' § 1983 claim is that he is entitled to such immunity.  (Mot. Summ. J. Mem. Supp. at 10–13.)  Essentially, Cpl. Pamer argues that he is entitled to qualified immunity because "[a] reasonable person in [his] position would not have known that his conduct

5

violated Ms. Hicks' rights," as "[t]here were several incriminating indicators [ ] supporting the filing of the statement of charges against Ms. Hicks," and because "there is no evidence of any malice on the part of Cpl. Pamer." (*Id.* at 12.) However, as before, Cpl. Pamer is not entitled to such immunity.

Qualified immunity "takes cognizance of human imperfections," *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014), and protects government officials from liability for "bad guesses in gray areas." *Brawn v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (quotations and citation omitted). In determining whether Cpl. Pamer is entitled to qualified immunity, the Court must ask "(1) whether the facts illustrate that the official violated the plaintiff's constitutional right; and (2) whether the right was clearly established law at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.'" *Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017) (quoting *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007)).

With respect to the first prong, the Supreme Court held in *Franks v. Delaware* that the Fourth Amendment may be violated when "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. 154, 155–56 (1978). A *Franks* violation requires both (1) intentionality or recklessness and (2) materiality. *See U.S. v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021). To establish intentionality, "the particular affiant must have been subjectively aware that the false statement or omission would create a risk of misleading the reviewing magistrate judge and nevertheless chose to run that risk." *Id.* at 377. To evaluate whether a false statement or omission was material, a court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the

'corrected' warrant affidavit would establish probable cause." *Miller*, 475 F.3d at 628 (quotations and citation omitted).

The questions of intentionality and materiality posed by this case are both suitable for a jury and the Court will not decide them here.  On the facts provided by the Defendants and Hicks with respect to intentionality, a reasonable jury could find that Cpl. Pamer made reasonable and honest mistakes.  However, a reasonable jury could also find that Cpl. Pamer acted intentionally or with reckless disregard for the truth.  *See Jackson v. Carin*, Civ. No. PWG-8:19-00564, 2020 WL 998736, at *6 (D. Md. Mar. 2, 2020) ("[A]ccording to the facts alleged, a reasonable trier of fact may find that [the detective] deliberately, or with reckless disregard for the truth, made material misrepresentations and omissions in the Application for [plaintiff's] arrest warrant.  He is therefore not entitled to qualified immunity.").

Similarly, with respect to materiality, a reasonable jury could find that, without the two incorrect identifications of Hicks (i.e., the statements that Allen positively identified Hicks in the photo array and that the woman in the videos was "identified as Hicks"), Cpl. Pamer's statements lacked probable cause.  *Hovatter v. Widdowson*, Civ. No. CCB-03-2904, 2006 WL 1037552 at *3 n. 7 (D. Md. Mar. 29, 2006) ("[I]n a civil § 1983 case, when a plaintiff challenges the sufficiency of a probable cause statement in light of intentional misrepresentations, the question is suitable for a jury . . . . [T]he issue is [ ] subject to judgment as a matter of law where there is no legally sufficient evidentiary basis for a reasonable jury to find that probable cause was lacking.")  The Court therefore finds that Cpl. Pamer is not entitled to qualified immunity on the first prong.

In the context of a *Franks* violation, the second prong of a qualified immunity inquiry— whether the constitutional right at issue is clearly established—is straightforward.  "The Fourth Amendment right to be arrested only on probable cause was clearly established at the time of the

events at issue here." *Osborne*, 679 F. App'x at 239.  Further, it is "clearly established 'that the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make . . . omissions to seek a warrant that would otherwise be without probable cause.'"  *Id.* (quoting *Miller*, 475 F.3d at 631–32).  Moreover, "a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by [omitted facts] that the officer knows or should know [would negate probable cause]."  *Id.* (alteration in original) (quotation marks omitted) (quoting *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 2014)).  Cpl. Pamer is therefore not entitled to qualified immunity on Hicks' § 1983 claim.

### B.  Qualified Immunity (State Law Claims)

Cpl. Pamer next argues that he is entitled to qualified immunity with respect to the state law claims as an "official of a municipal corporation" who was "acting in a discretionary capacity, without malice, and within the scope of [his] employment."  (Mot. Summ. J. Mem. Supp. at 13–16.)  Because such qualified immunity does not apply to Maryland constitutional claims or intentional torts, Cpl. Pamer is not entitled to qualified immunity on Hicks' Maryland Declaration of Rights, false arrest, false imprisonment, and malicious prosecution claims.  Further, because the Court cannot conclude that, as a matter of law, Cpl. Pamer did not act with malice, he is likewise not entitled to qualified immunity with respect to Hicks' gross negligence claim.  The Court therefore declines to grant Defendants' Motion for Summary Judgment on the basis of qualified immunity.

Maryland law provides qualified immunity to "an official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority."  Md. Code Ann., Cts. & Jud. Proc. § 5-507.  However, "§ 5-507 is merely a codification of existing common law public official immunity," *Fletcher v. Prince*

*Georges Cnty.*, 2017 WL 3302405, at \*8 (Md. Ct. Spec. App. Aug. 3, 2017), and common law qualified immunity "has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.'" *Lee v. Cline*, 384 Md. 245, 258, 863 A.2d 297, 305 (2004); *see also Crouch v. City of Hyattsville*, Civ. No. DKC-09-2544, 2010 WL 3653345, at \*4 (D. Md. Sept. 15, 2010) (explaining that the purpose of § 5-507 was to codify common law immunity and that, therefore, "although the statutory text contains no indication that statutory immunity was not intended to apply to intentional or constitutional torts, the court will nevertheless decline to apply them to those types of torts"); *Thomas v. Md.*, Civ. No. GJH-17-1739, 2017 WL 6547733, at \*6 (D. Md. Dec. 20, 2017) (explaining that police officers are protected by § 5-507 for negligence torts, as § 5-507 codified existing common law public official immunity, which does not apply to intentional torts). Therefore, Cpl. Pamer cannot avail himself of such qualified immunity with respect to Hicks' Maryland Declaration of Rights, false arrest, false imprisonment, and malicious prosecution claims.

However, qualified immunity may apply to Hicks' gross negligence claim.  To avoid liability on Hicks' gross negligence claim, Cpl. Pamer must have been acting (1) "in a discretionary capacity," (2) "within the scope of [his] employment," and (3) "without malice."  Md. Code Ann., Cts. & Jud. Proc. § 5-507.  "Malice means conduct which is 'motivated by ill will, by an improper motive, or by an affirmative intent to injure.'"  *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 805 (D. Md. 2001) (quoting *Shoemaker v. Smith*, 725 A.2d 549 (1999)).

While the first two elements are straightforward and Hicks does not seriously challenge them, malice in this case is a question of fact for the jury.  "Because the question of 'malice' turns on the arresting officer's motive and intent, we are mindful of oft-repeated admonitions against

resolution of such issues on summary judgment . . . . Specifically, the Court of Appeals has recognized that claims of qualified public official immunity usually present questions for the factfinder." *Thacker v. City of Hyattsville*, 762 A.2d 172, 189 (2000).   In addition, at the summary judgment stage, "inferences arising from the evidence presented by an arrestee challenging a claim of qualified immunity must be drawn in favor of the arrestee, and against summary judgment." *Id.* Here, a reasonable jury could find that Cpl. Pamer acted with malice, particularly given the open questions regarding intentionality and probable cause discussed above.  *See Bennett v. R & L Carriers Shared Servs., LLC*, 492 F. App'x 315, 329 (4th Cir. 2012) ("[L]egal malice may be proven by inference from a lack of probable cause if the circumstances of the case support the inference.").

### C.  Gross Negligence

Cpl. Pamer argues that this Court should grant summary judgment in his favor on Hicks' gross negligence claim because there is insufficient evidence of gross negligence as a matter of law.  (Mot. Summ. J. Mem. Supp. at 16–19.)  The Court cannot conclude that there is insufficient evidence of gross negligence and therefore will not grant summary judgment on that claim.

Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them."  *Cooper v. Rodriguez*, 118 A.3d 829, 832–33 (2015).  "Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case, and is usually a question for the jury and is a question of law only when reasonable people could not differ as to the rational conclusion to be reached."  *Id.* at 846 (citations and quotations omitted).  Here, a reasonable jury could determine that Cpl. Pamer acted with gross negligence through his conduct in investigating the assault,

10

including the alleged false statements about Allen's identification of Hicks in the photo array. Cpl Pamer is therefore not entitled to summary judgment on Hicks' gross negligence claim.

### D.  Additional Substantive Arguments

In addition to the claim of qualified immunity, Defendants argue that sufficient probable cause existed to defeat the state tort claims as a matter of law. (Mot. Summ. J. Mem. Supp. at 19–20.)  Defendants also argue—without elaboration—that "[i]n the alternative, Cpl. Pamer's mistaken belief was honest and reasonable and the arrest of Ms. Hicks was a valid arrest.  Further, there was insufficient evidence of improper motive or malice as a matter of law to support the Malicious Prosecution claim." (*Id.* at 20.)  However, as discussed above, these are all questions of fact for a jury.  The Court therefore declines to grant summary judgment on the state tort claims against Cpl. Pamer.

### E.  Claims Against Anne Arundel County

Defendants argue that, absent wrongdoing by Cpl. Pamer, the claims against the County fail. (*Id.* at 15, 20.)  However, the Court has not granted summary judgment on any of the claims against Cpl. Pamer.  The Court therefore declines to grant summary judgment on the claims against the County.

### IV.  Conclusion

For the reasons set forth in the foregoing Memorandum, Defendants' Motion for Summary Judgment (ECF No. 72) will be DENIED.

DATED this 14th day of October, 2021.

BY THE COURT:

_____/s/_____

James K. Bredar
Chief Judge

11