IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SHERITA K. HICKS,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-20-0022 |
| **ANNE ARUNDEL COUNTY,** *et al.*, | * | |
| | * | |
| Defendants. | | |
| | * | |

**MEMORANDUM OPINION**

Pending before the Court is plaintiff Sherita Hicks' motion for a new trial. ECF 145. The motion is fully briefed, and no hearing is required. *See* Loc. R. 105.6 (D. Md. 2021). Because Ms. Hicks has failed to present adequate grounds for a new trial, her motion is denied.

**I.   Background**

Sherita Hicks filed a civil rights lawsuit against the State of Maryland, Anne Arundel County, the Anne Arundel County Police Department, two Anne Arundel County detectives, two Maryland State's Attorneys, and the Anne Arundel County Department of Detention Facilities, in which she alleged she was unlawfully arrested and detained and maliciously prosecuted for an assault she did not commit. ECF 1. The Court dismissed Ms. Hicks' claims against all defendants other than Anne Arundel County and one Anne Arundel County detective, Cpl. Gregory Pamer. ECF 50. After discovery and the denial of Anne Arundel County and Cpl. Pamer's motion for summary judgment, the case proceeded to trial in June 2022 on a 42 U.S.C. § 1983 claim and related state law claims against those defendants. The jury returned a verdict on all counts for the defendants. ECF 141. In her motion for a new trial, Ms. Hicks asserts that a new trial is warranted because:

1. Having a jury venir[e] panel that only consisted of 2 people of color out of 29 possible jurors raised a prima facie issue of juror exclusion and improper jury selection techniques and constituted significant error as a matter of law.

2. Seating a jury that included no people of color, especially after the only 2 people of color were excluded for cause, constituted significant error as a matter of law.

3. Dismissal of a juror who did not fail to follow the instructions of the Court and who was not questioned [or] interviewed [and did not] otherwise state an opinion about the case [and was not] given the opportunity to state whether the juror could be fair and impartial is a significant error as a matter of law.

4. The failure to include any information on the verdict sheet regarding a defendant, Anne Arundel County, thus precluding the jury from understanding that Anne Arundel County [was] a defendant and giving the jury the incorrect impression that any monetary verdict must be paid solely by the defendant officer is a significant error as a matter of law.

5. The jury instructions were confusing to the jury, and constituted significant error as a matter of law, including, but not limited to the inclusion of a jury instruction regarding malice and gross negligence as crafted by the Court that neither party requested[,] [which was] a significant error as a matter of law, and resulted in jury confusion.

ECF 145, at 1–2.  Ms. Hicks also filed a memorandum in support of the motion for a new trial. ECF 147.[1]  The defendants filed a response.  ECF 150.

## II.  Standard of Review

Under Rule 59 of the Federal Rules of Civil Procedure, the Court may grant a new jury trial on all or some issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "A district court may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice."  *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017).  Although Ms. Hicks does not specify which of

---

[1] Ms. Hicks submitted two seemingly identical versions of her memorandum in support.  *See* ECF 147, 149.  The Court cites to ECF 147 throughout this memorandum.

these three grounds supports her motion, she does not argue the verdict was against the clear weight of the evidence or based on false evidence, so the Court assumes she argues the verdict resulted in a miscarriage of justice.

### III. Analysis

#### A. Composition of the Venire and the Jury

Ms. Hicks argues she is entitled to a new trial because the 29-person jury venire included only two people of color.

> In order to establish a prima facie violation of the fair-cross-section requirement, the [party] must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to a systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *Alexander v. Parks*, 834 F. App'x 778, 780 (4th Cir. 2020) (applying this standard in the context of a civil trial). Ms. Hicks has not offered any evidence that two people of color is not fair and reasonable in relation to the number of people of color in the community from which the venire was selected. *See Alexander*, 834 F. App'x at 780 (rejecting plaintiff's argument that jury was not a fair cross-section of the population where "[he] merely allege[d] the under-representation of African Americans in the jury panel" and where "[he] did not present any evidence of the racial make-up of the district or provide any evidence indicating a systematic exclusion of African Americans from the panel"). Even if she had offered evidence that people of color were unfairly and unreasonably underrepresented, she has not established that the underrepresentation is due to a systematic exclusion of people of color in the jury selection process. This Court sources its jury pools from a random selection of Marylanders on voter registration lists. The use of voter registration lists to select jury pools has been approved by the Fourth Circuit "as satisfying the fair cross-section requirement of the [Jury Selection Act] and the

3

[Sixth Amendment to the] Constitution." *Vigilant Ins. Co. v. Clay Props., Inc.*, 36 F.3d 1095 (Table) (4th Cir. 1994) (quoting *United States v. Cecil*, 836 F.2d 1431, 1454 (4th Cir. 1988)).

Ms. Hicks next argues the Court erred in excusing the only two people of color from the jury venire. "A trial court is accorded great discretion in determining the credibility of potential jurors during voir dire and deciding whether to exclude potential jurors." *Li v. Mitre Corp.*, 63 F. App'x 96, 97 (4th Cir. 2003). "The ultimate issue in deciding a challenge for cause is whether the juror 'could be fair and impartial and decide the case on the facts and law presented.'" *Id.* (quoting *United States v. Capers*, 61 F.3d 1100, 1105 (4th Cir. 1995)). The grounds for excusing these individuals for cause is amply supported by the record. The first potential juror was excused because she strongly and sincerely feared she would contract COVID-19 while serving on the jury and she would be unable to serve as a juror because of her fears. The second individual was excused because she too feared contracting COVID-19 and because she explicitly stated she could not be a fair and impartial juror in a case against a police officer.

Ms. Hicks has not established that the Court committed error in excusing these jurors for cause or that any error would warrant a new trial.

### B. Dismissal of Juror Number Four

After *voir dire*, the Court empaneled nine jurors, including three alternates. The Court instructed the jury as follows:

> During the trial you are not to discuss the case with anyone, including your fellow jurors, or to permit anyone to discuss it with you . . . Until you retire to the jury room at the end of the case to deliberate your verdict, you simply are not to talk about the case.

Trial began. Ms. Hicks introduced into evidence recordings of Cpl. Pamer's interrogations of the victim of the assault and his interrogation of her. During a break following this (and other) evidence, juror number four saw Ms. Hicks in the hallway and told her that she wished she could

4

give her a hug.  Counsel for Ms. Hicks appropriately brought this encounter to the Court's attention.  At the time, the Court declined the defendants' request to question the juror about the interaction but admonished the jury, once again, not to discuss the case or interact with any of the parties or witnesses.  At the close of evidence, the defendants requested that juror number four be excused before deliberations.[2]  Upon further consideration of the juror's conduct and the preliminary instructions not to discuss the case with anyone, the Court excused the juror without questioning her because the juror had disregarded the Court's instructions and there were eight jurors who could deliberate.  Ms. Hicks argues the Court erred by dismissing the juror without questioning whether the juror could be fair and impartial in light of her interaction with the plaintiff on the first day of trial and that there was no good cause to remove the juror.

Pursuant to Federal Rule of Civil Procedure 47(c), "[d]uring trial or deliberation, the court may excuse a juror for good cause."  Under this rule,

> [t]he court may in appropriate circumstances excuse a juror during the jury deliberations without causing a mistrial.  Sickness, family emergency or juror misconduct that might occasion a mistrial are examples of appropriate grounds for excusing a juror. It is not grounds for the dismissal of a juror that the juror refuses to join with fellow jurors in reaching a unanimous verdict.

Fed. R. Civ. P. 47 advisory committee's notes to 1991 amendment.  "The court enjoys considerable discretion to find good cause and may do so for all manner of reasons."  *Rockwell v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 18-0722-KG/SMV, 2022 WL 788390, at *1 (D.N.M. Mar. 15, 2022).  Further, "[w]hen determining whether sufficient cause exists to dismiss a juror, the district court has broad discretion to dictate the scope of its investigation and to decide whether to interview

---

[2] Ms. Hicks incorrectly contends that the juror was excused *sua sponte*.  The defendants requested that the juror be excused.

jurors." *Bostick v. State Farm Mut. Auto. Ins. Co.*, 774 F. App'x 600, 604 (11th Cir. 2019).[3] The Court had good cause to excuse the juror.

A failure to follow instructions is good cause to excuse a juror. *See, e.g.*, *United States v. Hodge*, 933 F.3d 468, 481 (5th Cir. 2019) (affirming dismissal of a juror where "the district court found that Juror No. 7 had failed to follow instructions, exhibited a lack of candor during questioning, and had engaged in threatening behavior towards other jurors"); *In re Wright Med. Tech. Inc., Conserve Hip Implant Prod. Liab. Litig.*, 178 F. Supp. 3d 1321, 1347 (N.D. Ga. 2016) (finding a "[j]uror's refusal to follow the Court's instructions as contained on the Supplemented Verdict Form, constituted good—if not compelling—cause to dismiss him from the jury"), *aff'd in part sub nom. Christiansen v. Wright Med. Tech., Inc.*, 851 F.3d 1203 (11th Cir. 2017). Ms. Hicks argues the juror did not fail to follow the Court's instruction not to discuss the case with anyone because merely telling Ms. Hicks she wished she could give her a hug was not discussing the case. On the contrary, immediately after the introduction of the recorded police interrogations, including Ms. Hicks' interrogation in which she cried and pleaded with Cpl. Pamer that she was innocent, the juror communicated her reaction to what she witnessed during the trial by telling Ms. Hicks that she wished she could give her a hug. As Ms. Hicks notes,

> [w]hen the audio recordings were played in the beginning of the case, Plaintiff experienced an emotional reaction to hearing them . . . and that reaction may have been visible to the jury in general, and to this juror in particular, especially since the juror was seated only a few seats away from the Plaintiff.

ECF 147, at 3–4. This conduct amounted to a violation of the Court's instruction not to talk about the case with anyone and was good cause for the juror's dismissal. Moreover, the Court did not

---

[3] There appears to be limited Fourth Circuit law in this area, and the Court therefore looks outside the circuit for non-binding, persuasive precedent.

6

need to interview the juror before finding good cause for dismissal. *See Bostick*, 774 F. App'x at 604.

The cases on which Ms. Hicks relies are inapposite because they involve jurors in criminal cases who were removed after deliberations began pursuant to Federal Rule of Criminal Procedure 23(b)(3), which provides that "[a]fter the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror." In several of those cases, appellate courts concluded that the district court's removal of the juror was improper because there was evidence that the juror was excused either because the juror was a holdout or because the juror harbored doubts about the sufficiency of the government's evidence. *See, e.g.*, *United States v. Thomas*, 116 F.3d 606, 625 (2d Cir. 1997) (finding that the district court abused its discretion by dismissing a juror during deliberations where the record "raises the possibility that the juror was attempting to follow the law as instructed, but that he simply remained unpersuaded of the defendants' guilt"); *United States v. Brown*, 823 F.2d 591, 597 (D.C. Cir. 1987) (finding district court erred by dismissing juror where there was a possibility "that [the juror's] desire to quit deliberations stemmed from his belief that the evidence was inadequate to support a conviction"); *United States v. Hernandez*, 862 F.2d 17, 23 (2d Cir. 1988) (finding dismissal of juror improper where it was unclear whether "Juror No. Four's disagreement with his colleagues was not the cause of his removal"). This case, by contrast, is civil, not criminal. When juror number four was excused, deliberations had not yet begun, and there were more than six jurors left to deliberate. And, the juror was excused for reasons unrelated to her views on the merits of the case.

Ms. Hicks has not established that the Court's removal of juror number four without first asking her whether she could be fair and impartial warrants a new trial.

7

### C. Verdict Sheet

Ms. Hicks next argues the Court erred by failing to include information on the verdict sheet about the defendant Anne Arundel County because this omission precluded the "the jury from understanding that Anne Arundel County [was] a defendant and g[ave] the jury the incorrect impression that any monetary verdict must be paid solely by the defendant officer." ECF 145, at 2.

The jury was advised several times, either orally or in writing, that Anne Arundel County was a defendant. Before deliberations began, the Court instructed the jury that Ms. Hicks had a vicarious liability claim against Anne Arundel County based on the actions of its employee, Cpl. Pamer. During closing arguments, Ms. Hicks highlighted the instruction on Anne Arundel County's vicarious liability for Cpl. Pamer's actions and explained to the jury that they should not be concerned with who would pay any judgment, as there were two defendants, Cpl. Pamer and Anne Arundel County. The defendants objected to this portion of the closing, which the Court overruled, allowing plaintiff's argument to continue and stand. When deliberations began, the jury was given a verdict sheet whose case caption listed "Anne Arundel County, et al." as the defendants. *See* ECF 141. In sections I, II, and III of the verdict sheet, the jury was asked whether Cpl. Pamer—whom the jury knew was an employee of co-defendant Anne Arundel County—was liable for violations of 42 U.S.C. § 1983, malicious prosecution, and gross negligence, respectively. On these questions, the jury answered no; there was no reason to ask whether they found Anne Arundel County liable because the county's liability depended entirely on a finding of Cpl. Pamer's liability. Although the jury did not reach the question of damages, the damages section did not refer to either defendant or otherwise suggest that any damages would be paid only by Cpl. Pamer.

Ms. Hicks has not demonstrated that the verdict sheet's omission of information about Anne Arundel County resulted in a miscarriage of justice that would warrant a new trial.

### D. Jury Instructions

Finally, Ms. Hicks argues:

> [The] jury instructions were confusing to the jury, and constituted significant error as a matter of law, including, but not limited to the inclusion of a jury instruction regarding malice and gross negligence as crafted by the Court that neither party requested[,] [which was] a significant error as a matter of law, and resulted in jury confusion.

ECF 145, at 2. Ms. Hicks does not elaborate on this argument in her post-trial submissions. She incorporates the arguments she made a trial and does not provide any authority to support her position.

"A new trial is appropriate based on jury instructions only if the jury instruction was erroneous and 'there is a reasonable probability that the erroneous instruction affected the jury's verdict.'" *Finch v. Covil Corp.*, 388 F. Supp. 3d 593, 617 (M.D.N.C. 2019) (quoting *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018)), *aff'd*, 972 F.3d 507 (4th Cir. 2020). Further, challenges to a district court's jury instructions are "review[ed] holistically and through the prism of the abuse of discretion standard. . . . A jury verdict, moreover, represents a good deal of work on the part of a good many people, and the instructions undergirding that collective effort should not succumb lightly to semantic fencing." *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011). "The party challenging the jury instructions faces a heavy burden, for '[the Fourth Circuit] accord[s] the district court much discretion' to fashion the charge." *Id.* (quoting *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994)).

Ms. Hicks fails to identify any error in the Court's instructions, let alone any error that affected the jury's verdict. The instructions on malice and gross negligence reflected Maryland law as articulated by Maryland's highest court. *See, e.g.*, *Montgomery Ward v. Wilson*, 664 A.2d

9

916, 925 (Md. 1995) (defining malice in the malicious prosecution context); *Stracke v. Est. of Butler*, 214 A.3d 561, 568–69 (Md. 2019) (defining gross negligence). Ms. Hicks has not shown she is entitled to a new trial because of erroneous jury instructions.

## IV. Conclusion

For the foregoing reasons, Ms. Hicks' motion for a new trial is denied. A separate Order will issue.

DATED this 28th day of October, 2022.

                                                        Deborah L. Boardman
                                                        United States District Judge